## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER WILLIAMS, (TDCJ-CID #01174592) | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION H-11-4287 |
| DONNIE W. SELLERS, JR., et al., | § § § | |
| Defendants. | § | |

### MEMORANDUM AND OPINION

Christopher Williams, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"), filed this suit in December 2011. He alleged that two TDCJ-CID correctional officers at the Ellis Unit, Donnie W. Sellers and Zachary Nixon, retaliated against him for exercising his First Amendment right to complain about a correctional officer and to file grievances. Williams is proceeding *pro se* and *in forma pauperis*.

The defendants, Sellers and Nixon, have moved for summary judgment. (Docket Entry No. 23). Williams has responded, (Docket Entry No. 24), and Sellers and Nixon have filed a reply. (Docket Entry No. 27).

Based on the pleadings, the motion, the summary-judgment record, and the applicable law, this court grants the summary-judgment motion and enters final judgment by separate order. The reasons are stated below.

I.       **The Record**

A.       **The Complaint Allegations**

Williams alleges that in May 2010, Officer Sellers assaulted him by throwing a 32-ounce pitcher of tea on him.  Warden Kennedy and Warden Gaston were on the scene and witnessed the event.  Williams reported the assault to Warden Kennedy, and Officer Sellers was suspended. Williams alleges that when Officer Sellers returned to work after his suspension, he began harassing Williams.

Williams alleges that on December 8, 2010, he was walking past Officer Sellers in the hallway when Officer Sellers pointed at him and told Officer Nixon, "that is the one who got me suspended.  Go tear up his cell and write him a case."  Williams's cell was not on the list of cells scheduled to be searched that day.  Officer Nixon, acting at Officer Sellers's direction, searched Williams's cell and issued him a disciplinary charge for possessing contraband.  When Williams asked Officer Nixon why he was doing Officer Sellers's "dirty work," Officer Nixon stated, "I'll do what I want to do, I'll beat you up and then lock you up and get away with it."  Williams alleges that Officer Sellers and Officer Nixon conspired to charge him with a disciplinary case in retaliation for reporting the tea-throwing incident.

On December 8, 2010, Williams filed a grievance alleging that Officer Sellers had retaliated against him. After the grievance, Officer Sellers allegedly threatened to "get" Williams and to teach him a lesson.

On July 28, 2011, Officer Hatthorn was escorting Williams to prehearing detention. Williams had been charged with being out of place.  Williams alleges that Officer Hatthorn told Officer Sellers, "go tear his [] stuff up and bring it to F-wing."  Officer Sellers went to Williams's

cell and stole or damaged his property. Williams alleges that Officer Sellers broke a lock and a radio, stole a night lamp, poured water on family pictures and legal materials, stole some legal material, and stole $500.00 of commissary items. Williams alleges that Officer Sellers later retaliated against him by not letting him go to church or to appointments and by subjecting Williams to additional pat-down searches.

On December 1, 2011, Officer Sellers searched Williams's cell while he was in the day room. Officer Sellers read legal materials relating to preparations to file this lawsuit. Officer Sellers allegedly offered Williams contraband if he refrained from suing Officer Sellers. Williams filed a grievance concerning the incident. He alleges that on December 17, 2011, Officer Sellers threatened to teach Williams "the hard way"; on January 17, 2012, Officer Sellers told Williams that he should have kept his mouth shut; and on January 18, 2012, Officer Sellers told another inmate, Matthew Whitmire, "you should keep better f—ing company than that snitching bitch ass punk there. He'll learn the hard way to keep his mouth shut." Officer Sellers repeatedly told Williams that he was taking steps against Williams because of the earlier suspension. Williams seeks $100,000.00 in punitive damages and $1.00 in nominal damages.

## II.     The Motion for Summary Judgment

### A.     The Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and if the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). If the burden of proof at trial lies

with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B.     The Summary Judgment Evidence

The defendants provide the following summary judgment evidence:

(A)     TDCJ grievance records for Williams, with an affidavit of Sandra K. Murphy;

(B)     TDCJ disciplinary records for Williams, with an affidavit of Carla Palombo;

(C)     an affidavit of defendant Zachary Nixon;

(D)     an affidavit of defendant Donnie Sellers, Jr.; and

(E)     an affidavit of Brad Hutchison, custodian of records at the Ellis Unit.

Officer Nixon testified as follows:

> My name is Zachary Nixon. I am over the age of 18; competent to
> make this affidavit and have personal knowledge of the facts stated
> herein.  I am making this affidavit in connection with the cause of
> action entitled, *Christopher Williams v. Dannie W. Sellers Jr. et al.,*
> Civil Action No. 4:11-cv-04287 now pending in the Southern District
> of Texas, Houston Division in which I am a defendant.
>
> I am familiar with the claims made against me by the Plaintiff
> Christopher Williams. I understand that he claims that on December
> 8, 2010, Officer Sellers instructed me to search Offender Williams
> cell because of some dispute that occurred between them several
> months prior.
>
> At the time of this incident, I was a Correctional Officer III
> employed at the Ellis Unit.  Since that time I have been promoted
> several times and I am now a Lieutenant of Correctional Officers
> employed at the Eastham Unit.  Never at any time was Officer Sellers
> my superior officer with authority to give me orders.
>
> I understand that the Plaintiff has claimed that his cell was not
> on the list of cells to be searched on this particular day.  As a regular
> procedure, cells are searched on a regular basis.  Typically, a small
> number of cells are randomly selected for search each day.  This is
> done to ensure that every cell is searched at least once per month.  I
> do not recall the particular day of this search and I cannot say whether
> Offender Williams was or was not on the list.  However, simply
> because a cell is not listed on the search list for a particular day, all
> cells are subject to search at any time.  Regardless of whether
> Offender Williams' cell was listed on this particular day, I cannot
> recall a time when I have searched a cell simply because another
> officer had a personal problem with the offender.  I do not recall
> Officer Sellers either ordering or requesting that I search this
> offender's cell.  Even if he did, I did not search Offender Williams'

cell simply because Officer Sellers told me to.  He did not have authority to issue such an order to me.

I have reviewed the disciplinary offense report I filed after the searching Offender Williams cell.  It indicates that Offender Williams was in possession of a tube of glue concealed inside a medicine tube. This property was contraband.  I also note from the disciplinary records that Offender Williams admitted the item was contraband and was found guilty at his disciplinary hearing.  At no time did I take any action toward Offender Williams due to his any exercise of his constitutional rights.  I acted according to TDCJ policy and my assigned duties.

Further the affiant sayeth not.

(Docket Entry No. 23, Defendants' Motion for Summary Judgment, Ex. C, pp. 1-2).

Officer Sellers testified:

My name is Donnie Sellers Jr.  I am over the age of 18; competent to make this affidavit and have personal knowledge of the facts stated herein.  I am making this affidavit in connection with the cause of action entitled, *Christopher Williams v. Donnie W. Sellers Jr. et al.,* Civil Action No. 4:11-cv-0487 now pending in the Southern District of Texas, Houston Division in which I am a defendant.

I am familiar with the claims made against me by the Plaintiff Christopher Williams.  At the time relevant to this complaint, I was a correctional officer employed by the Texas Department of Criminal Justice and I worked at the Ellis Unit.  I understand that Plaintiff Williams claims that on various occasions I retaliated against him due to his exercise of his constitutional rights.  I deny these claims.

I understand that Plaintiff Williams claims that on December 8, 2010 I instructed Officer Nixon to search his cell.  At no time was I ever Officer Nixon's superior officer.  I had no authority to order him to search anyone's cell.  I also did not ask him to search the cell and I have no knowledge as to why the cell was searched.  However, I have reviewed the relevant records and I see that he found to be in possession of contraband and was convicted of a disciplinary offense. I had no involvement in any of this process.

I understand that Plaintiff Williams claims that on July 28, 2011, I destroyed his property in retaliation for filing complaints against me. I have reviewed the records related to this incident. Offender Williams was found to be in the cell of another inmate and disciplinary documents indicate that he admitted to being there to get a tattoo. When Offender Williams was taken to pre-hearing detention, officers packed his property to be stored until his was released back to general population.[1] I was one of the officers assigned to this process. When collecting the property, it was found that several of Offender Williams' electrical items had been improperly altered. They had been "piggy-backed" which means they had been wired together to plug into a single electrical outlet. Inmates are not permitted to alter their electrical devices in this way because it creates a fire hazard. I completed a "Prop-8" property confiscation form indicating the reason for the confiscation. The document also indicates that Offender Williams' lock had been altered. While I do not recall the exact nature of the alteration, usually this occurs when a lock has been altered such that the key in possession of TDCJ officers will not open the lock.

I also completed a disciplinary offense report for the electrical items. It appears from disciplinary records that Offender Williams pled guilty to this offense. I also understand that Plaintiff Williams claims I poured water on his property and stole other items. I deny these claims. I have no knowledge of any theft or destruction to Plaintiff's Williams property. At no time did I take any action with regard to Plaintiff Williams because he filed complaints against me. I completed my duties as assigned under TDCJ policy.

I also understand that Plaintiff Williams claims I read his legal documents and offered to provide him with contraband to drop the case. These claims are false and I deny them.

Further the affiant sayeth not.

(Docket Entry No. 23, Defendants' Motion for Summary Judgment, Ex. D, pp. 1-3).

---

[1]    Several officers, including Officer Sellers, inventoried Williams's property. (Docket Entry No. 23-3, Ex. A, pp. 11-12). Officers Bradley and Mueller completed an inventory sheet. (*Id.* at 11). The property included several items that were contraband because they had been inappropriately altered. (*Id.* at 12). These included Williams's hot pot, a radio with headphones, a lamp, and a lock. (*Id.*; Docket Entry No. 23-5, Ex. B, p. 22).

Major Brad Hutchison provided an affidavit stating:

> I am employed as Major at the ELLIS Unit of the Texas Department of Criminal Justice ("TDCJ"), located in HUNTSVILLE, Texas, and do hereby certify that I am the custodian of records maintained in the regular course of business on each and every offender incarcerated at the ELLIS Unit.
>
> I have reviewed the request for records and hereby certify that after a thorough search of the records of the Ellis Unit of TDCJ that we find no records that meet the following description: Any / all cell search list / log related to any searches on the Ellis Unit B Wing during the 1st Shift on 12/08/2010 related to Offender Williams, Christopher TDCJ # 1174592. The Agency Record Retention for cell search documentation is one (1) year.

(Docket Entry No. 23, Defendants' Motion for Summary Judgment, Ex. E, p. 1).

Williams submitted sworn declarations of Imerix LaFleur (TDCJ #1226787), John Miller (TDCJ #1288245), Anthony Hamilton (TDCJ #1416601), and Matthew Dillon Whitmire (TDCJ #1233161), all inmates at the Ellis Unit.

Imerix Eugene LaFleur testified:

> Imerix Eugene LaFleur, T.D.C.J. #1226787, hereby declairs that I did in fact witness Officer Sellers throw tea at Offender Williams while Offender Williams was talking to me in front of my cell, B-2-1-2. Officer Sellers was on Two Row cursing and yelling obscenities at offenders, and when he (Sellers) threw the tea, it did hit Offender Williams on his legs and feet.
>
> Warden's E. Kennedy and K. Gaston were walking down the hallway, and drawn by the yelling and cursing, witnessed this also. Warden E. Kenedy called Offender Williams to her where the two had brief word's; and then she (Warden Kenedy) called Officer Sellers, who was shaken at the presense of the Warden. The Warden's left WITH Officer Sellers right then, and a diffrent officer finished the shift on our wing.

(Docket Entry No. 7, Ex. A).

John Henry Miller stated:

> I, John Henry Miller, T.D.C.J. #1288245, herby declares I was being
> cursed and threatened by CO. Sellers while the officer was racking up
> B-2. I was in my cell, B-2-15, looking down the run with a mirr[]or
> and saw Officer Sellers throw what he had in his 32oz. cup at
> offender Williams.  Then the head warden, E. Kennedy, called
> offender Williams over to her at the door where she briefly had
> word's with him.  After speaking to him, the Warden then called
> Officer Sellers to leave the wing with her; in which officer Sellers did
> not return that day.
>
> On July 28th, 2011, offender Williams cell was searched by Officer
> Sellers. I was in my cell, B-4-1-13, when I heard a lock being kicked
> open, and plastic such as that from an appliance being broke/busted.
> Then Officer Sellers dragged Williams property down the run on the
> floor.

(Docket Entry No. 7, Ex. K).

Anthony Russell Hamilton's declaration stated:

> Anthony Russell Hamilton, T.D.C.J. #1416601, hereby declairs that
> I witnessed Officer Sellers make the statement: "This is the one that
> I have been waiting on, he got me sent to Arbitration Classes. We got
> him now." to Srgt. Hatthorn while waiting for Offender Williams cell
> door to open.  I was in my cell B-4-1-9 next door to offender
> Williams cell. (B-4-1-10) I heard Officer Sellers ask Srgt. Hatthorn:
> "What about his lock?".   (Speaking of Offender Williams
> Commissary Lock) The reply was the sound of the lock being kicked
> repeatedly until it broke off of the locker. I saw pieces of the lock as
> they hit the floor out on the run infront of the cell. I also heard Srgt.
> Hatthorn say: "We found his tool (Homemade screwdriver) for his
> (Offender Williams) radio". Then I heard the radio being broke,
> pulled apart with loud popping and cracking noises. I saw the radio
> in two diffrent pieces in a red "Chain Bag". I also heard water being
> spillt on the floor, and saw the wet streak as Offender Williams
> property was drug down the run.

(Docket Entry No. 7, Ex. B).

Matthew Dillon Whitmire's declaration stated:

> I, Matthew Dillon Whitmire #1233161, declare that on 12-17-11, I witnessed and heard Officer Sellers stop inmate C. Williams and heard Officer Sellers say to him, "I see your going to have to learn the hard way, you should have kept your mouth shut. Grievances wont help you, they havent yet and the OIG is a joke". Inmate Williams walked away from Officer Sellers and Sellers started to curse at Williams saying "I've got something for your f---ing ass, you no good f---er". This was after Williams and I came out of the showers.
>
> The very next day 12-18-11, Officer Sellers coursed me out saying "I should keep better company than that f---er Williams, and "he is a snitching b--ch ass punk. He'll learn the hard way to keep his mouth shut."

(Docket Entry No. 11, p. 16).

### C.    The Grievance Records

The court has reviewed the grievance records, (Docket Entries Nos. 23-1 - 23-4, Defendants' Motion for Summary Judgment, Ex. A), and provides the following summaries:

#### (1)    Grievance #2011061448, filed on December 9, 2010.

Williams described previous incidents involving Officer Sellers. Williams stated that earlier in the year, Warden Kennedy and Assistant Warden Gaston had escorted Officer Sellers off the wing after he verbally threatened Williams and threw tea on him. Williams alleged that after Officer Sellers returned to the unit, he had subjected Williams to repeated cell searches, refused to allow Williams to attend church, and directed Officer Nixon and Officer Cole to harass Williams with cell searches and verbal abuse. Williams alleged that on December 8, 2010, Officer Sellers told Officer Nixon to tear up Williams's cell, even though Williams's name was not on the list of cells to be searched. Williams alleged that Officer Nixon charged him with a disciplinary violation for possessing contraband to retaliate on behalf of Officer Sellers. When Williams asked Officer Nixon

why he was doing Officer Sellers's dirty work, Officer Nixon responded that he would beat Williams

up and get away with it.  (Docket Entry No. 23-4, pp. 12-13).

On January 12, 2011, Assistant Warden K. Gaston responded to the grievance:

> An investigation into you're [sic] your allegation has been initiated
> by this office.  After obtaining and reviewing statements from staff,
> insufficient evidence was found that the officer named in your
> complaint is harassing you or threatening your life in any way.  Nor
> was any evidence found that staff violated policy.  Furthermore the
> officer denies your allegations.  No further action is warranted by this
> office.

(Docket Entry No. 23-4, p. 13).

On January 25, 2011, Williams filed a Step 2 Grievance.  (Docket Entry No. 23-4, pp. 10-

11).  On February 15, 2011, D. Morris responded: "Your Step 2 grievance has been investigated by

this office.  Your allegations could not be sustained; however, your complaint is noted.  Staff

conduct will continue to be monitored to ensure professionalism and policy compliance.  No further

investigation is warranted by this office."  (*Id.* at 11).

### (2)    Grievance #2011207887, filed on August 2, 2011.

Williams alleged that Officer Hatthorn put him in prehearing detention in retaliation for

reporting that Officer Hatthorn had threatened another inmate.  Williams also alleged that Officer

Hatthorn was using subordinate officers to retaliate against Williams.  Williams stated that Officer

Sellers had retaliated against him in the past, referring to Grievance #2011061448.  Williams alleged

that Officer Hatthorn and Officer Sellers conspired to steal, damage, or discard Williams's legally

obtained property, including stealing a hot pot, a radio with headphones, a lock, and two T-shirts,

and caused water damage to books, letters, and magazines.  (Docket Entry No. 23-2, pp. 24-25).

Williams also alleged that Officer Sellers failed to comply with TDCJ-CID regulations requiring inventory and completion of confiscation forms.

On September 2, 2011, Assistant Warden J. Werner responded:

> An investigation into your property claim has been made by this office. There was no evidence found that the officer named in your complaint did not inventory your property. A PROP 05 and a PROP 08 was filled out. Your hot pot and radio were confiscated due to their being altered. No further action is warranted by this office.

(Docket Entry No. 23-2, p. 25).

On September 9, 2011, Williams filed a Step 2 Grievance. (Docket Entry No. 23-2, pp. 22-23). On October 11, 2011, K. Ward responded: "Your property complaint has been reviewed by this office. This investigation finds the propert[y] in question was appropriately confiscated. No further action will be taken." (*Id.* at 23).

### (3)    Grievance #2012061076, filed on December 8, 2011.

Williams alleged that in a cell search on December 1, 2011, Officer Sellers found a draft complaint naming him as the defendant. Officer Sellers asked about the complaint and whether Williams had learned his lesson, and told Williams that if he did not file the complaint, Officer Sellers would "make it up" to him. Williams alleged that Officer Sellers had used other officers to retaliate against Williams. (Docket Entry No. 23-2, p. 10).

On January 17, 2012, Warden R. Morris responded:

> An investigation into your claim that CO Sellers read your legal document and gets other officers to retaliate against you for him has been made by this office. After obtaining and reviewing statements from staff there was insufficient evidence found to support your claim. Furthermore the officers named in your complaint denied your allegation. Your grievance contained multiple issues. Present only one issue per grievance as stated in the Offender Grievance

Operations Manual.  See attached Instructions on How to Write and
Submit Grievances.  No further action is warranted by this office.

(Docket Entry No. 23-2, p. 11).

On January 20, 2012, Williams filed a Step 2 Grievance.  (Docket Entry No. 23-2, pp. 8-9).

On March 28, 2012, D. Morris responded: "Your Step 2 grievance has been investigated by this

office. There is insufficient evidence to support your allegations of misconduct by staff.  Immediate

corrective action will be taken should any staff misconduct be confirmed.  No further investigation

is warranted by this office."  (*Id.* at 9).

**D.      The Disciplinary Records**

The disciplinary records are summarized below.

**(1)      Disciplinary Case 20110102351**

In disciplinary case 20110102351, Officer Nixon charged Williams with possessing

contraband, a .5-ounce tube of glue.  At a December 16, 2010, Williams admitted that he possessed

contraband, and was punished with a 10-day loss of commissary privileges and cell restriction.

(Docket Entry No. 23-3, p. 28).

**(2)      Disciplinary Case 20110340656**

In disciplinary case 20110340656, Sergeant Hatthorn charged Williams with being in an

unauthorized location on July 28, 2011.  Williams was being escorted to prehearing detention when

he stated that he was supposed to receive a tattoo in cell B4-2-17.   During the prehearing

investigation, Williams did not refute the charges.  At the August 2, 2011 hearing, Williams pleaded

guilty to the charge.  The hearing officer found Williams guilty based on his admission and the

charging officer's report.  Williams was punished with a 45-day loss of commissary privileges, and

loss of recreation privileges, and cell restriction. He was also ordered to remain at a good-time earning class status of Line 3. (Docket Entry No. 23-5, p. 3).

### (3)   Disciplinary Case 20110145947

In disciplinary case 20110145947, Williams was charged with stealing blank state-issued passes, Form I-22, on January 24, 2011. At the February 10, 2011 hearing, Williams denied any knowledge of the passes. The charging officer testified that the passes were recovered during a cell search. Williams was found guilty based on the charging officer's report, Officer Lopez's testimony, and the charging officer's testimony. Williams was punished with a 45-day loss of commissary privileges, loss of recreation privileges, and cell restriction. He was also again ordered to remain at a Line 3 good-time earning class status. (Docket Entry No. 23-5, p. 11).

### (4)   Disciplinary Case 20110341777

In disciplinary case 20110341777, Williams was charged with possessing contraband, specifically, a hot pot, a radio, lamp, and an altered electrical cord with slits to allow a single connection into the electrical outlet. The offense date was July 28, 2011. Williams pleaded guilty at a hearing on August 4, 2011. The charging officer, Officer Sellers, testified that all three plugs were consolidated into a single plug and that when he removed the plug from the wall, he experienced an electrical shock. The altered cord was considered a fire and safety hazard. Williams was punished with a ten-day cell restriction. (Docket Entry No. 23-5, p. 20).

### (5)   Disciplinary Case 20110048778

In disciplinary case 20110048778, Williams was charged with being in an unauthorized location and with knowingly giving false information about the location of his identification card. The offense date was October 15, 2010. Williams pleaded guilty in an October 21, 2010 hearing.

The finding of guilt was based on the charging officer's report, and Williams's admissions. Williams was punished with a 30-day loss of recreation privileges, a loss of commissary privileges, and cell restriction. He was ordered to remain in Line 3 good-time earning class status.

This court analyzes the defendants' motion and the summary-judgment evidence under the applicable law.

## III.   The Claims Against the Defendants in Their Individual Capacities

### A.   The Legal Standard for Qualified Immunity

The defendants assert that as a matter of law, they are entitled to qualified immunity because Williams failed to allege a constitutional violation and because the undisputed evidence shows that their actions were objectively reasonable in light of clearly established law. (Docket Entry No. 23, Defendants' Motion for Summary Judgment, pp. 15-17).

Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Flores v. City of Palacios,* 381 F.3d 391, 393-94 (5th Cir. 2004). A court must determine whether a statutory or constitutional right would have been violated on the facts alleged, *Saucier v. Katz,* 533 U.S. 194, 200 (2001); *Aucoin v. Haney,* 306 F.3d 268, 272 (5th Cir. 2002), and whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores,* 381 F.3d at 395 (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). If the law was clearly established at the time of the incident, the court must decide whether the defendant's conduct was objectively reasonable. *Aucoin,* 306 F.3d at 272. An official's conduct is objectively reasonable unless a reasonable officer in the defendant's circumstances would have known that the conduct

violated the Constitution. *Hampton v. Oktibbeha Cnty. Sheriff Dep't,* 480 F.3d 358, 363 (5th Cir. 2007). Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez ex. rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.,* 380 F.3d 872, 879 (5th Cir. 2004).

Once a government officer pleads the affirmative defense of qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the employee's allegedly wrongful conduct violated clearly established law. *Bazan v. Hidalgo Cnty.,* 246 F.3d 481, 489 (5th Cir. 2001). This requires the plaintiff to plead "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir. 1996). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton,* 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).

**B.      The Legal Standard for a Retaliation Claim**

Prison officials may not retaliate against an inmate for exercising his right of access to the courts or complaining to a supervisor about a guard's misconduct. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied,* 516 U.S. 1084 (1996). To prevail on a retaliation claim, an inmate must establish: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for exercising that right, (3) a retaliatory or adverse act, and (4) causation. *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Woods,* 60 F.3d at 1166), *cert. denied,* 522 U.S. 995 (1997). Conclusory allegations of retaliation are insufficient to withstand a motion for summary

judgment. *Woods*, 60 F.3d at 1166. "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson v. Rodriguez*, 110 F.3d at 310 (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods v. Smith*, 60 F.3d at 1166 (internal quotation marks omitted). While the existence of a "legitimate prison disciplinary report" is not an "absolute bar to a retaliation claim" it is certainly "probative and potent summary-judgment evidence." *Id.*

Some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." *Morris v. Powell,* 449 F.3d 682, 686 (5th Cir. 2006) (citing *Crawford–El v. Britton,* 523 U.S. 574, 588 n.10 (1998)). "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Id.* For example, a job transfer from the commissary to the kitchen might be *de minimis,* while a transfer to a more dangerous unit might rise to a level of an adverse retaliatory act. *Id.* at 687. Retaliation is actionable only if it "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early,* 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted).

### C.    The Claims Relating to the December 8, 2010 Events

Williams claims that in May 2010, he was talking with another inmate when Officer Sellers threw a 32-ounce pitcher of tea on him. Williams alleges that Warden Kennedy and Warden Gaston witnessed the assault and that he reported the assault to Warden Kennedy. Officer Sellers was suspended.

On December 8, 2010, Williams alleges that as he walked past Officer Sellers in the hallway, Sellers pointed at Williams and told Officer Nixon to search his cell.  Williams claims that Officer Nixon did so and charged Williams with a disciplinary case for possessing contraband.  Williams alleges that the search and charge were retaliation for the suspension Officer Sellers had received.

The invocation of a specific constitutional right is the first element of a retaliation claim.  In *Peters v. Quarterman*, 252 F. App'x 705, 2007 WL 3230333 (5th Cir., October 31, 2007), an inmate alleged that he was disciplined in retaliation for threatening a female correctional officer with exposure of her alleged inappropriate relationship with another inmate, and her alleged smuggling of contraband to that inmate.  The Fifth Circuit stated:

> Peters does not identify what specific constitutional right he exercised that prompted the allegedly retaliatory disciplinary action.  Peters had not exercised his right to file a grievance or seek legal action.  If his brief is liberally construed, Peters suggests that his threat to complain about a correctional officer's misconduct is sufficient to show a chronology of events from which a retaliatory motive may be inferred.  Peters, however, does not argue that his threat to expose a correctional officer's misconduct amounts to his exercise of a specific constitutional right.  Peters has thus failed to state a valid claim of retaliation.

*Peters,*  252 F. App'x at 706.

Similarly, in *Tighe v. Wall,* 100 F.3d 41 (5th Cir. 1996), an inmate was removed from his job as counsel substitute.  The warden filed an affidavit saying that he believed the inmate had called the family of another inmate, alleging physical abuse in the prison.  The inmate alleged that he was dismissed from the job in retaliation for providing legal assistance to other inmates by making the call to the other inmate's family.  The Fifth Circuit held that to survive summary judgment, the inmate had to allege a violation of a constitutional right and demonstrate a retaliatory motive.

Although the inmate argued that his First Amendment right of free speech included the right to give legal assistance to fellow inmates, and that he was removed from his job as inmate counsel and transferred to another prison in retaliation for exercising this right, the Fifth Circuit held that a prisoner has no constitutionally protected interest in a particular facility or a specific work assignment. Because the inmate failed to show the violation of a constitutional right that was the basis for the allegedly retaliatory acts, his retaliation claim lacked merit. *Tighe*, 100 F.3d at 43.

Williams does not identify what specific constitutional right he exercised that prompted the allegedly retaliatory disciplinary action. Williams had not exercised his right to file a grievance or seek legal action. Liberally construing his argument, Williams alleges that his verbal complaint to Warden Kennedy and Warden Gaston about the tea-throwing incident they witnessed shows a chronology of events from which a retaliatory motive may be inferred. But Williams alleges that the officers he told about the event who were on the scene, witnessed it themselves, and escorted Officer Sellers off the floor. Williams acknowledges that Wardens Kennedy and Gaston reassured him that they had witnessed the incident and were taking corrective action. Williams asserts that any grievance he would have filed would have been moot. (Docket Entry No. 24, Plaintiff's Response, p. 2). Williams fails to allege or show that the allegedly adverse acts were taken in retaliation for his invocation of a specific constitutional right. His claim on this point is without merit. *See Mohwish v. Yusuff*, 209 F.3d 718, 2000 WL 283164 (5th Cir., February 1, 2000) (affirming the dismissal of a retaliation claim brought in a federal habeas petition because the petitioner failed to state a claim for retaliation).

Williams has also failed to show "but for" causation, the fourth element of a retaliation claim. Williams alleges that the December 8, 2010 cell search was in retaliation for reporting the tea

incident in May 2010. Williams argues that his cell was not on the list of cells scheduled to be searched, and that the only reason Officer Nixon searched Williams's cell that day was because of Officer Sellers's retaliatory motive. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 1).

Officer Nixon testified that cells are routinely searched on a regular basis. In addition to searching cells on a list to be searched on a given day, to ensure that every cell is searched at least once per month, some cells are randomly selected for search each day. Officer Nixon explained that even though a cell is not listed on the search list for a particular day, all cells are subject to search at any time. The summary-judgment evidence shows that the TDCJ-CID had a policy of randomly searching cells, in addition to searching cells on a list for a particular day. Even if Williams's cell was not scheduled to be searched on December 8, 2010, his cell could have been selected for a random search on that day. Williams has not raised a fact issue as to whether, but for the defendants' retaliatory motive, his cell would not have been searched and he would not have been charged with a disciplinary case for possessing a tube of glue concealed inside a medicine tube.

Officer Nixon testified that Officer Sellers was not his superior officer and had no authority to give him orders. Officer Nixon testified that he did not recall Officer Sellers either ordering or asking him to search Williams's cell. It was an officer with no retaliatory motive who searched the cell. Officer Sellers was suspended as a result of throwing tea on Williams in May 2010, but he did not conduct the allegedly retaliatory search on December 8, 2010. Officer Nixon searched Williams's cell on December 8, 2010 and charged him with a disciplinary case. Additionally, the search and disciplinary case were seven months after the tea incident. No causal connection can be inferred between these facially unrelated events, occurring seven months apart, and not involving

the same TDCJ officials.  No evidence raises a fact issue as to whether Williams's cell was searched for retaliatory reasons.

The summary-judgment evidence shows that Williams pleaded guilty to the charged offense. Items that cannot be shown to have a legitimate source are considered contraband.  Williams cannot show that, but for the alleged retaliatory motive, his undocumented "contraband" would not have been seized during a routine cell search.  *See id.  Brown v. Craven*, 106 F. App'x 257, 2004 WL 1730128 (5th Cir. 2004).

There is no evidence supporting an inference of but-for causation between the search and disciplinary charge and the basis for the retaliatory motive.  *See Armenta v. Pryor*, 377 F. App'x 413, 2010 WL 1849278 (5th Cir. 2010) ("Armenta has failed, however, to provide any competent summary-judgment evidence of intent or causation. As the district court noted, most of Armenta's grievances were filed months before the alleged retaliatory act and he provides no evidence that any of the Defendants were named in, or had any knowledge of, his prior grievances or his lawsuit.); *Coleman v. Wortham*, 45 F. App'x 320, 2002 WL 1860327 (5th Cir. 2002) ("Although Coleman argues that he alleged a chronology of events from which retaliation can reasonably be inferred, he is incorrect.  Coleman alleged that he complained about Wortham to Assistant Warden Sweeten, Major Smith, Captain Ransburger, and Unit Classification Director Roth in January 1998 and that he received a disciplinary case six months later from Warden Medart and Lieutenant Simpson for participating in a riot.  No causal connection can be inferred between these facially unrelated events, occurring six months apart and not involving the same TDCJ officials."); *Robinson v. Schilling*, 273 F.3d 1094, 2001 WL 1085112 (5th Cir. 2001) ("Robinson alleges that Kaz fired him in retaliation for his having exercised his First Amendment right to pursue grievances.  However, as the district

court concluded, he has not sufficiently pleaded the causation element because he has not alleged a chronology of events from which retaliation may plausibly be inferred.  His complaint states that his grievances against Kaz were filed almost eight months before he was fired for making unauthorized copies, that he was reprimanded for doing legal work on the job the week before he was fired, and that it was Alex Perrez, not Kaz, who accused him of making the unauthorized copies which resulted in his termination.  These factual allegations fail to establish that Robinson would not have been fired but for Kaz's retaliatory motivation, and the claim was properly dismissed.").

The retaliation clam based on the December 8, 2010 events is dismissed.

### D.       The Claim Relating to Events on July 28, 2011

Williams asserts that Officer Sellers retaliated against him by singling him out for disciplinary case #2011341777, falsifying confiscation documents to cover his destruction of Williams's property, damaging or stealing property valued at over $500.00, and failing to file a property 05 form on Williams's property.  The summary-judgment evidence shows that on July 28, 2011, Williams was found in the cell of another inmate.  Disciplinary records reveal that Williams admitted to being there to get a tattoo.  When Williams was taken to prehearing detention, officers packed his property for storage until he was released back to general population.  Officer Sellers was one of the officers assigned to this task.  While collecting Williams's property, officers discovered that several of Williams's electrical items had been improperly altered.  The electrical plugs had been "piggy-backed" – wired together to plug into a single electrical outlet – which is forbidden because it creates a fire hazard.  Officer Sellers completed a "Prop-8" property confiscation form stating the reason for the confiscation.  The document stated that Williams's lock had been altered

as well.  Such alterations are forbidden because the TDCJ's keys may not be able to open an altered lock.

        In support of his claim, Williams offers the declaration of inmate Anthony Russell Hamilton, who stated that he heard Officer Sellers ask Sergeant Hatthorn: "What about his lock?"  Hamilton testified that he heard the sound of the lock being kicked until it broke off of the locker.  Hamilton saw pieces of the lock as they hit the floor in the area in front of the cell.  Hamilton then  heard the radio being broken and saw the radio in two different pieces in a red "Chain Bag."  Hamilton heard water being spilled on the floor, and saw the wet streak as Williams's property was dragged down the run.  (Docket Entry No. 7, Ex. B).

        Hamilton's description of what he heard is consistent with the testimony of Officer Sellers about the confiscation of property on July 28, 2011.  While packing Williams's property, the officers discovered several items that had been improperly altered.  The officers confiscated the contraband, which included a radio, lamp, and hot pot.  Hamilton heard the lock being forcibly removed.  As for water damage, Hamilton heard water spilling on the floor, but did not see who spilled it or where it came from.  The water could have leaked out on the run, or walkway in front of the cell, from any cell along the walkway.

        Officer Sellers also completed a disciplinary offense report for the electrical items.  Williams pleaded guilty to this offense, admitting that he possessed these items.  By pleading guilty, Williams conceded that the confiscated items had been altered, in violation of TDCJ rules.  (Docket Entry No. 23-5, p. 20).  Williams cannot show that, but for the alleged retaliatory motive, his contraband would not have been seized during the cell search.  *Brown v. Craven*, 106 F. App'x 257, 2004 WL 1730128

(5th Cir. 2004). The record does not support an inference that but for the retaliatory motive, the challenged incident would not have occurred.

Williams has not identified or submitted competent evidence of a retaliatory motive by the defendants. Nor has he alleged a chronology of events from which retaliation may be plausibly inferred. Williams's claims amount to his personal belief that he was the victim of retaliation. Williams's conclusory allegations are insufficient to show that the defendants retaliated against him for exercising his right to file grievances. Williams has not proffered any evidence that the alleged acts of retaliation impeded his access to the courts or chilled his efforts to litigate. *Johnson v. Rodriguez,* 110 F.3d 299, 314 (5th Cir. 1997).

Williams's retaliation claim based on the events of July 28, 2011 is dismissed.

### E.    The Claim Relating to Events on December 1 and 17, 2011

Williams alleges that on December 1, 2011, Officer Sellers searched and read Williams's legal research concerning this suit. Also on December 1, 2011, Officer Sellers told Williams that if he refrained from filing the lawsuit, Sellers would reward him. Williams alleges that on December 17, 2011, Officer Sellers threatened to "teach Williams the hard way" and said that Williams should have "kept his mouth shut."

Williams fails to present a retaliation claim because he does not allege that Officer Sellers took an adverse act against Williams. Allegations of verbal abuse are not actionable. *Bender v. Brumley,* 1 F.3d 271, 274 (5th Cir. 1993). Mere threatening language and gestures of a custodial officer do not amount to a constitutional violation. *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.); *cert. denied,* 464 U.S. 998  (1983) (quoting *Coyle v. Hughs,* 436 F. Supp. 591, 593 (W.D. Okla.

1977)).  The remarks Williams attributes to Officer Sellers do not support a claim of violation of Williams's constitutional rights.

Even assuming that Officer Sellers's verbal threats are construed as an adverse retaliatory act, the threat is no more than *de minimis*.  Officer Sellers did not "chill" Williams from filing grievances, filing this lawsuit, or otherwise attempting to exert his constitutional rights.  Williams's retaliation claim based on the events of December 1, and 17, 2011 is dismissed.

## F.     The Remaining Retaliation Claims

The defendants argue that Williams's remaining retaliation claims should be dismissed for failure to exhaust administrative remedies.  Title 42 U.S.C. § 1997e states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (Supp. 1996).  Section 1997e(a) applies to all inmate suits about prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion is a prerequisite to suit even when the prisoner seeks relief not available in grievance proceedings, such as money damages. *See Booth v. Churner*, 532 U.S. 731, 740-41 (2001).  When a prisoner fails to exhaust his administrative remedies before filing suit without a valid excuse, the court may dismiss the action without prejudice to its refiling after the prisoner exhausts his administrative remedies. *See Wendell v. Asher*, 162 F.3d 887, 890-92 (5th Cir. 1998);[2] *Gordon v. Pettiford*, 271 F. App'x 464, 464 (5th Cir. 2008) (per curiam).  When exhaustion

---

[2]     Although *Wendell* was partially overruled by *Jones v. Bock*, 549 U.S. 199 (2007), *see Richbourg v. Horton*, No. 08-10443, 2008 WL 5068680 at *1 (5th Cir. Dec. 2, 2008) (per curiam), the proposition for which it is cited remains good law.

is precluded because the deadlines for the administrative remedies have passed, the action is properly dismissed with prejudice. *Johnson v. La. ex rel. La. Dep't of Pub. Safety & Corr.*, 468 F.3d 278, 278-81 (5th Cir. 2006) (per curiam).

The TDCJ provides a two-step procedure for presenting administrative grievances. Step 1 requires the prisoner to submit an administrative grievance at the institutional level. *Wendell v. Asher*, 162 F.3d 887, 892 (5th Cir. 1998) (citing TDCJ Admin. Directive No. AD-3.82 (rev.1), Policy ¶ IV (Jan. 31, 1997)). After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator. *Id.* Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Institutional Division of the TDCJ. *Id.* After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for Step 2 of the process, which is the director, deputy director, regional director, or assistant director. *Id.*

The grievance procedure takes approximately 90 days to exhaust. *Id.* Prisoners are allowed 15 calendar days to file a Step 1 grievance. *Id.* (citing TDCJ Admin. Directive No. AD-3.82 (rev.1), Policy ¶ VI (Jan. 31, 1997)). The response to the Step 1 grievance is due within 40 days after receipt of the grievance. *Id.* The prisoner then has 10 days to submit an appeal. *Id.* The response to the Step 2 grievance is due within 40 days after receipt of the prisoner's appeal. *Id.* The TDCJ Inmate Grievance System provides that if an inmate does not receive a written decision by the 180th day after the grievance is filed, he may proceed with his other state or federal court remedies. TEX. GOV'T CODE § 501.008(d)(2).

The defendants maintain that Williams failed to exhaust administrative remedies concerning his claim that Officer Sellers engaged in retaliatory conduct prior to the December 8, 2010, cell search. The defendants refer to Williams's claims that he "would search my cell even though my cell was not on the cell-search list for that day, would not let me go to church, would refuse to let me go to appointments and singled me out for bodily pat searches." (Docket Entry No. 11, Amended Complaint, p. 6). Williams also claimed that Sellers denied him his medication and a state-issued mattress on July 28, 2011. (Docket Entry No. 10, p. 3). Williams further asserted that the contraband was actually seized in an unidentified inmate's cell located on the second floor, a cell that was scheduled to be searched. (Docket Entry No. 10, Plaintiff's More Definite Statement, p. 4).

The summary-judgment evidence shows that Williams filed a Step 1 grievance alleging that he could not attend religious services and did not timely receive his medication after he was sent to prehearing detention. (Docket Entry No. 23-1, pp. 30-32; Docket Entry No. 23-2, p. 1). Williams did not allege that Sellers was responsible, and did not allege any form of retaliation. Williams did not file a Step 2 grievance on either of these claims.

In his response to the motion for summary judgment, Williams explains that he is asserting retaliation claims based on the events on December 8, 2010, July 28, 2011, and December 1 and 17, 2011. (Docket Entry No. 24, p. 5). Williams states:

> D is unsure if P has exhausted administrative remedies with regard to his general and undated complaints of retaliation. P administrative remedies exhaustion has been shown to the court in regards to the complaint filed and response to the court's more definite statement. All other incidents referred to are supportive in that they show a chronology of events from which retaliation may plausibly be inferred and are support by declarations from witnesses (said declarations have been entered and are on record. As P sent them into the court to

> be entered and preserved in the court in fear of further retaliation and
> loss thereof[)].

(*Id.*).

To the extent Williams raises retaliation claims based on events other than December 8, 2010, July 28, 2011, and December 1 and 17, 2011, those claims are dismissed with prejudice for failure to exhaust administrative remedies, as required by the PLRA.

The defendants' alleged failure to address the grievances to Williams's satisfaction did not violate his constitutional rights. Williams's due process claim based on an inadequate grievance procedure is dismissed.

### G.    Conclusion on the Retaliation Claims

Sellers and Nixon are entitled to qualified immunity on summary judgment unless: (1) Williams has "adduced sufficient evidence to raise a genuine [dispute] of material fact suggesting [the officers'] conduct violated an actual constitutional right"; and (2) the officers' "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008). "Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." Williams has not met his burden. Williams has not identified summary-judgment evidence creating a genuine factual dispute material to determining retaliation. The defendants' motion for summary judgment dismissing Williams's retaliation claims is granted.

## IV.    The Conspiracy Claim

Williams asserts that prison officials engaged in a conspiracy to falsely charge him with disciplinary violations in retaliation for filing grievances. The elements of civil conspiracy are an

actual violation of a right protected under § 1983 and actions taken in concert by the defendants with the specific intent to violate the right. *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir.), *cert. denied,* 513 U.S. 868 (1994). Williams has not alleged facts showing illegal acts or that the defendants entered into an agreement to commit an illegal act. *Kerr v. Lyford,* 171 F.3d 330, 341-42 (5th Cir. 1999) (finding that the appellants' civil conspiracy claim was contingent on the success of their malicious prosecution claim). Williams's bald allegations that the defendants conspired to violate his First Amendment right to seek legal redress do not state a constitutional violation. "It remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient." *Gillum v. City of Kerrville,* 3 F.3d 117, 123 (5th Cir. 1993) (quoting *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir. 1984)). Williams's conclusory assertion that a conspiracy existed is insufficient to carry his summary-judgment burden. *See Hale v. Harney,* 786 F.2d 688, 690 (5th Cir. 1986).

Williams's conspiracy claim is dismissed.

## V.    The Claim Based on a Denial of Due Process

Williams complains about the loss or destruction of personal property. A negligent, or even intentional, deprivation of property by state officials is not actionable under 42 U.S.C. § 1983 if state law provides an adequate postdeprivation remedy. *Hudson v. Palmer,* 468 U.S. 517, 533–34 (1984). *See also Stotter v. University of Texas at San Antonio,* 508 F.3d 812, 821 (5th Cir. 2007) (explaining the *Parratt/Hudson* doctrine). Texas provides a remedy for inmates whose property has been taken or destroyed in an unauthorized manner. *See Myers v. Klevenhagen,* 97 F.3d 91, 95 (5th Cir. 1996); *Marshall v. Norwood,* 741 F.2d 761, 764 (5th Cir. 1984); *Aguilar v. Chastain,* 923 S.W.2d 740, 743–44 (Tex. Crim. App. 1996); *see also* TEX. GOV'T CODE §§ 501.007, 501.008.

Williams's allegation that items of personal property were lost or destroyed in an unauthorized manner fails to state a claim. *See Myers,* 97 F.3d at 95; *see also Leggett v. Williams,* 277 F. App'x 498, 500, 2008 WL 1984271 (5th Cir. 2008) (holding that the plaintiff's claim that his property was confiscated and destroyed as an act of retaliation for his status as a writ writer was barred by the *Parratt/Hudson* doctrine). This claim is dismissed.

## VI.    The Claims Against the Defendants in Their Official Capacities

Suits for damages against the state are barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court. *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993). This bar remains in effect when state officials are sued for damages in their official capacity. *Cory v. White,* 457 U.S. 85, 90 (1982). Williams sues the defendants for damages in their official capacities. Those claims are barred by the Eleventh Amendment and are dismissed.

## VII.    Conclusion

The defendants' motion for summary judgment, (Docket Entry No. 23), is granted. Williams's motion for the appointment of counsel, (Docket Entry No. 25), is denied as moot. Williams's motion for depositions, (Docket Entry No. 26), is denied. The defendants' motion for protective order, (Docket Entry No. 29), is granted *nunc pro tunc.* Any remaining pending motions are denied as moot.

Final judgment is entered by separate order.

SIGNED on February 26, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge